# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

**In re:**

| | | |
|---|---|---|
| **TMST, INC. (f/k/a/ THORNBURG MORTGAGE, INC.)**, *et al.*, | * | Case No. 09-17787 (NVA) Jointly Administered |
| Debtors, | * | |
| | * | Adversary Proceeding Case No. 11-00340 (NVA) |
| | * | |
| **JOEL I. SHER in his capacity as Chapter 11 Trustee for TMST, INC.**, *et al.*, | * | CIVIL NO. JKB-15-75 |
| Plaintiff, | * | |
| | * | |
| **JPMORGAN CHASE FUNDING INC.**, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## <u>MEMORANDUM</u>

The matter now pending before the Court is rooted in an ongoing Chapter 11 bankruptcy action in the United States Bankruptcy Court for the District of Maryland ("the bankruptcy proceeding"). The bankruptcy proceeding was initiated in 2009 by TMST, Inc. f/k/a Thornburg Mortgage, Inc. ("TMST"), TMST Acquisition Subsidiary, Inc. f/k/a Thornburg Acquisition Subsidiary, Inc. ("TAS"), TMST Home Loans, Inc. f/k/a Thornburg Mortgage Home Loans, Inc. ("TMHL"), and TMST Hedging Strategies, Inc. f/k/a Thornburg Mortgage Hedging Strategies, Inc. ("TMHS," and collectively the "Debtors"). *See* Chapter 11 Voluntary Petition, *In re TMST, Inc.*, Case No. 09-17787-DK (Bankr. D. Md. May 1, 2009), ECF No. 1. Joel I. Sher is the court-appointed Chapter 11 Trustee (the "Trustee") for the Debtors' jointly administered estates. In 2011, the Trustee commenced this proceeding ("the adversarial proceeding"), asserting thirty-

one claims against JPMorgan Chase Funding Inc., Citigroup Global Markets Limited, Citigroup Global Markets Inc., Credit Suisse Securities (USA) LLC, Credit Suisse International, RBS Securities Inc., Greenwich Capital Derivatives, Inc., Royal Bank of Scotland plc, and UBS AG (collectively, the "Defendants"). *See* Original Complaint, *In re TMST, Inc.*, Case No. 11-00340-DK (Bankr. D. Md. Apr. 30, 2011), ECF No. 1. The adversarial proceeding was automatically referred to the bankruptcy court, pursuant to Local Rule 402. Now pending before the Court is Defendants' motion to withdraw the reference to the Bankruptcy Court. (ECF No. 1.) The issues have been briefed (ECF Nos. 1, 2 and 3) and no hearing is required, Local Rule 105.6. For the reasons explained below, Defendants' motion to withdraw the reference will be DENIED.

## I. Background[1]

The Debtors had been involved in the once profitable business of investing in mortgage-backed securities ("MBS"). *See* Amended Complaint ¶¶ 19-34, *In re TMST, Inc.*, Case No. 11-00340-DK (Bankr. D. Md. June 8, 2011), ECF No. 15. They "financed the acquisition of MBS primarily through financing agreements with investment banking and securities firms such as the Defendants," and pledged MBS to the Defendants as collateral. *Id.* ¶ 20. In February 2008, the market value of MBS began to fall quickly, which lead the Defendants to make a series of "aggressive" margin calls. *Id.* ¶¶ 44-54. "Facing a deluge of margin calls and recognizing that current market conditions made it untenable for [the Debtors] to contest every margin call, [the Debtors] spent the second week of March 2008 engaging the Defendants in a strained attempt to restructure its debts with them." *Id.* ¶ 55. Through these negotiations, the Debtors and

---

[1] In synthesizing the facts of this complex matter, the Court relies on the parties' briefing related to the Defendants' motion to withdraw the reference (ECF Nos. 1, 2, and 3), as well as the Trustee's amended complaint, Amended Complaint, *In re TMST, Inc.*, Case No. 11-00340-DK (Bankr. D. Md. June 8, 2011), ECF No. 15, and the bankruptcy court's memorandum and order granting in part and denying in part the Defendants' motion to dismiss, Sept. 25, 2014 Memorandum and Order, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. Sept. 25, 2014), ECF Nos. 76 and 77.

Defendants reached an agreement "to override and extend" the terms of the original financing agreements (the "Override Agreement"). *Id.* ¶¶ 55-56. In the ensuing year, the market for MBS continued to erode. The Debtors and Defendants amended the Override Agreement (the "AOA") "[t]o clarify their respective rights" (ECF No. 1-1 at 11-12), and later executed forbearance agreements (the "Forbearance Agreements") to give the Debtors "additional breathing room" (*Id.* at 12). Both the AOA and the Forbearance Agreements included provisions releasing the Defendants from specified potential claims by the Debtors (the "First Release" and "Second Release"). (*Id.* at 12.)

On May 1, 2009, fourteen months after the Override Agreement was executed, the Debtors filed for Chapter 11 bankruptcy. Chapter 11 Voluntary Petition, *In re TMST, Inc.*, Case No. 09-17787-DK (Bankr. D. Md. May 1, 2009), ECF No. 1. Shortly thereafter, the bankruptcy court appointed Joel I. Sher as the Trustee to jointly administer the Debtors' estates. *TMST*, Case No. 09-17787-DK (Bankr. D. Md. Oct. 28, 2009), ECF No. 506. The Defendants filed proofs of claim in the underlying bankruptcy proceeding "in the aggregate amount of" approximately $2.6 billion. (ECF No. 2 ¶ 3.) Significantly, at the time the Debtors and Defendants signed the Override Agreement, the Defendants "represented that their aggregate . . . claims against the Debtors totaled" approximately $5.8 billion. (*Id.* ¶ 2.) "It is the manner in which the Defendants reduced their alleged claims [from $5.8 billion to $2.6 billion] between the execution of the Override Agreement and the filing of their Proofs of Claim that is at the heart of this Adversary Proceeding." (*Id.* ¶ 3.)

The Trustee commenced this adversarial proceeding on April 30, 2011 and the case was automatically referred to the bankruptcy court for this district. Original Complaint, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. Apr. 30, 2011), ECF No. 1. The Trustee then amended his complaint on June 8, 2011. Amended Complaint, *TMST*, Case No. 11-00340-DK (Bankr. D.

3

Md. June 8, 2011), ECF No. 15. This amended complaint included thirty-one separate counts, and generally sought "redress for the Defendants' conduct after the execution of the Override Agreement and the manner in which they systematically seized or obtained all of the Debtors' liquidity, MBS and other assets and applied the proceeds thereof to their respective claims." (ECF No. 2 ¶ 4.)

Before filing an answer to the amended complaint, the Defendants filed two consecutive motions: On September 12, 2011, the Defendants filed a joint motion to dismiss the amended complaint, Motion to Dismiss, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. Sept. 12, 2011), ECF No. 32; and on October 26, 2011, the Defendants filed their first motion to withdraw the reference, First Motion to Withdraw the Reference, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. Oct. 26, 2011), ECF No. 33.

On July 23, 2012, this Court denied the Defendants' first motion to withdraw the reference. Order, *Joel I. Sher v. JP Morgan Chase Funding*, Civ. No. L-12-157 (D. Md. July 23, 2012), ECF No. 8. The Court—presided over by Judge Legg—noted that "[a]t least 28 of the 31 counts in the Amended Complaint are properly within the core jurisdiction of the Bankruptcy Court." *Id.* On the remaining three counts,[2] the Court held that "[a]ssuming *arguendo* that the Bankruptcy Court lacks final adjudicatory authority under Stern, it may still submit proposed findings of fact and conclusions of law pursuant to the procedure set forth in 28 U.S.C. § 157(c)(1)." *Id.* Defendants' motion was denied, and the matter was returned to the Bankruptcy Court for further proceedings.

On September 25, 2014, the Bankruptcy Court entered an order granting in part and denying in part Defendants' motion to dismiss. *See* Sept. 25, 2014 Memorandum and Order,

---

[2] In this first motion to withdraw the reference, the Defendants apparently only argued that the Bankruptcy Court lacked final adjudicatory authority over Counts 7, 27, and 28 of the amended complaint. *See* First Motion to Withdraw the Reference, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. Oct. 26, 2011), ECF No. 33-2.

*TMST*, Case No. 11-00340-DK (Bankr. D. Md. Sept. 25, 2014), ECF Nos. 76 and 77. The Court dismissed twenty-two of the Trustee's thirty-one original counts. *Id.* The following nine counts are what remain of the Trustee's amended complaint: Counts 3, 7, 10, 16, 20, 27, 28 29, and 31.[3] *Id.* On October 15, 2014, both the bankruptcy proceeding and the adversarial proceeding were reassigned from Judge Keir to Judge Alquist. *See TMST*, Case No. 09-17787-NVA (Bankr. D. Md. Oct. 15, 2014); *TMST*, Case No. 11-00340-NVA (Bankr. D. Md. Oct. 15, 2014).

The Defendants have now filed their second motion to withdraw the reference, on the theory that while "bankruptcy law claims and issues predominated in the case" when the first motion to withdraw was denied, the Trustee's complaint is now better suited for resolution in the district court in light of the Bankruptcy Court's order dismissing most of the Trustee's claims. (ECF No. 1-1 at 8.) Defendants' motion (ECF No. 1), the Trustee's response in opposition (ECF No. 2), and Defendants' reply (ECF No. 3) were all referred to this Court on January 9, 2015.

## II. Analysis

In general, "district courts shall have original and exclusive jurisdiction of all cases under title 11," the Bankruptcy Code. 28 U.S.C. § 1334(a). District courts may, however, refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 . . . to the bankruptcy judges for the district." *Id.* § 157(a). In the District of Maryland, all qualifying cases—including the instant action—are "deemed to be referred to the bankruptcy judges of this District." Local Rule 402. "The district court may withdraw, in whole or in part, any case or proceeding referred under this section, on its own motion or on

---

[3] The Bankruptcy Court's order also dismissed Count 27 as to Defendant Citi Global LTD. Sept. 25, 2014 Order, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. Sept. 25, 2014), ECF No. 77. The Bankruptcy Court subsequently vacated in part those portions of the order that had dismissed the Trustee's "assertion of a right against Citi Global LTD for breach of the forbearance agreement" as well as the Trustee's asserted "right to turnover and disallowance of claim based upon the asserted facts and application of Sections 559 and 562 . . . ." Nov. 14, 2014 Memorandum and Order, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. Nov. 14. 2014), ECF Nos. 91 and 92.

timely motion of any party, for cause shown." 28 U.S.C. § 157(d). The Defendants now move this Court to withdraw the reference to the bankruptcy court pursuant to § 157(d).

"The district court has broad discretion in deciding whether reference should be withdrawn for cause shown," and "[i]t is the movant's burden to show cause . . . ." *In re Millennium Studios, Inc.*, 286 B.R. 300, 303 (D. Md. 2002) (internal quotation marks omitted). In assessing a motion to withdraw the reference, courts consider the following six factors: "(1) whether the matter at issue between the parties is 'core' within the meaning of Section 157(b)(2) of the Bankruptcy Code; (2) uniformity of bankruptcy administration; (3) forum shopping; (4) conservation of creditor and debtor resources; (5) expediency of the bankruptcy proceeding; (6) the likelihood of a jury trial." *Albert v. Site Mgmt., Inc.*, 506 B.R. 453, 455 (D. Md. 2014). "The most important factor is whether the case presents a core or non-core proceeding," and so the Court begins its analysis accordingly. *Allen v. Nat'l City Mortg. Co.*, No. 2:04 CV 188, 2:05 MC 144, 2006 WL 3899997, at *2 (S.D. W. Va. July 13, 2006).

### A. Core vs. Non-core Claims

By statute, bankruptcy judges are authorized to "hear and determine all cases under title 11 and all *core proceedings* arising under title 11, or arising in a case under title 11 . . . ." 28 U.S.C. § 157(b)(1) (emphasis added). The statute provides a non-exhaustive list of sixteen types of core claims. *Id.* § 157(b)(2). For statutorily non-core claims that are "otherwise related to a case under title 11," a bankruptcy judge may still retain authority to hear the case, but "cannot finally resolve [the claims] and must instead submit proposed findings of fact and conclusions of law to the district court." *Moses v. CashCall, Inc.*, 781 F.3d 63, 70 (4th Cir. 2015) (citing 28 U.S.C. § 157(c)(1)). Alternatively, "with the consent of all the parties to the proceeding," a district court "may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments . . . ." *Id.* § 157(c)(2).

6

In 2011, the Supreme Court identified a constitutional limit on a bankruptcy court's authority to issue final judgments. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). Now, "even where the bankruptcy court possesses statutory power to enter a final judgment under Section 157 because the issue is 'core,' Article III presents an independent bar to the bankruptcy court's adjudication of at least some cases." *Albert*, 506 B.R. at 457. Stated differently, claims must be both *statutorily* and *constitutionally* core for a bankruptcy court to possess final adjudicatory authority. A claim is not *constitutionally* core unless it "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131. S. Ct. at 2618. "[W]hen a bankruptcy court is faced with a claim that is *statutorily* core but *constitutionally* non-core—a so-called 'Stern claim'—it must treat the claim as if it were statutorily non-core, submitting proposed findings of fact and conclusions of law to the district court for *de novo* review."[4] *Moses*, 781 F.3d at 70 (citing *Exec. Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014)).

In this case, the Trustee asserts nine claims that may be grouped into three categories:

- The Avoidance Claims (Counts 3, 10, 16, and 20)
- The Objections to Defendants' Proofs of Claim (Counts 27, 29 and 31)
- The Common Law Claims (Count 7 and 28)

The Court assesses each set of claims in turn, concluding whether any set is categorically beyond the authoritative reach of a bankruptcy court. At the outset, the Court finds that all claims against creditors[5] are *statutorily* core pursuant to, *inter alia*, § 157(b)(2)(C), which extends to all "counterclaims by the estate against persons filing claims against the estate." And claims against

---

[4] Similar to a *statutorily* non-core claim, the parties may still consent to a bankruptcy court's adjudication of a *constitutionally* non-core claim where it relates to a case under title 11. *See generally Wellness Int'l Network, Ltd. v. Sharif*, 135 S. Ct. 1932 (2015).

[5] *Creditor* refers to those Defendants who have filed proofs of claim in the underlying Chapter 11 bankruptcy proceeding.

7

non-creditors are probably not *constitutionally* core, and thus may not be finally adjudicated by the Bankruptcy Court (absent consent) as discussed in Section II.C. *infra*. Thus, the Court primarily considers whether the Trustee's claims against creditors are *constitutionally* core.

The Court hastens to note that it makes these determinations at this point *only* for the purpose of deciding the motion before it. Notwithstanding the Court's analysis below, the Court is fully confident that these determinations are more properly suited for initial consideration by bankruptcy judges, who possess familiarity with the underlying legal issues and who are consistently fair and capable arbiters in resolving similar issues.[6] For that reason, the Court does not decide as a matter of law whether any particular claims in this case are properly deemed *core proceedings*. Rather, the Court merely considers here whether Defendants, the movants, have satisfied their burden to show that the Court should exercise its broad discretion to withdraw the reference to the Bankruptcy Court.

### 1. The Avoidance Claims

In the Avoidance Claims[7]—Counts 3, 10, 16, and 20—the Trustee alleges that the debtors made fraudulent transfers to the Defendants under the direction and/or control of the Defendants. (ECF No. 2 ¶ 19.) "The purpose of the Bankruptcy Code's avoidance provisions is to prevent a debtor from making transfers that diminish the bankruptcy estate to the detriment of creditors." *In re Derivium Capital LLC*, 716 F.3d 355, 361 (4th Cir. 2013). Section 548(a)(1)(A) enables a trustee to avoid any transfer made "with actual intent to hinder, delay, or defraud" a creditor. 11 U.S.C. § 548(a)(1)(A). Section 550 is the accompanying liability provision, which states that "to

---

[6] A bankruptcy court's initial determination is subject to appeal to the district court, though. *See* 28 U.S.C. § 158. And even if the bankruptcy court enters an invalid final judgment, the district court may cure this error through "de novo review and entry of its own valid final judgment." *Exec. Benefits Ins. Agency*, 134 S. Ct. at 2174-75.

[7] The Defendants label these same four counts differently—as "Actual Fraud Claims"—but the Defendants agree that these claims "seek[] to avoid transfers under the Override Agreement (Count 3) and the AOA (Count 10), as well as avoidance of the Forbearance Agreements (Count 16) and the Second Releases contained therein (Count 20)." (ECF No. 1 at 15-16.)

the extent that a transfer is avoided under section . . . 548 . . . , the trustee may recover, for the benefit of the estate, the property transferred . . . ." *Id.* § 550(a). And § 502(d) of the bankruptcy code is a related provision, stating that a "court shall disallow any claim of any . . . transferee of a transfer avoidable under section . . . 548 . . . , unless such . . . transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section . . . 550 . . . ." *Id.* § 502(d).

The Trustee seeks to *avoid* transfers pursuant to § 548(a)(1)(A), seeks to *recover* the value of these transfers pursuant to § 550(a), and seeks to *disallow* Defendants' claims in the bankruptcy proceeding pursuant to § 502(d). The Court first holds that fraudulent transfer claims may be constitutionally core, if the claims would necessarily be resolved as part of the claims allowance process. Further, as to claims against the Defendants who are creditors in the bankruptcy proceeding, it appears that these fraudulent transfer claims are constitutionally core, as explained below.

A fraudulent transfer claim may be constitutionally core where the defendant is a creditor in the underlying bankruptcy proceeding. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), the Supreme Court considered "whether a person who has not submitted a claim against a bankruptcy estate has a right to a jury trial[8] when sued by the trustee in bankruptcy to recover an allegedly fraudulent monetary transfer." *Id.* at 36. The Court held that a non-creditor *does* have a right to a jury trial because, where a party has "not filed claims against the estate, [the trustee's] fraudulent conveyance action does not arise as part of the process of allowance and disallowance of claims. Nor is that action integral to the restructuring of debtor-creditor relations." *Id.* at 59 (internal quotation marks omitted). Significantly, though, *Granfinanciera*

---

[8] While *Granfinanciera* involved the Seventh Amendment right to a jury trial, courts have consistently applied its reasoning and holding in cases similar to the instant action, where the question is whether Article III authorizes or prohibits a bankruptcy court to adjudicate claims. *See, e.g.*, *Stern*, 131 S. Ct. at 2614-15; *id.* at 2628 (Breyer, J. dissenting) ("As we have recognized, the jury trial question and the Article III question are highly analogous.").

does not categorically strip bankruptcy courts' authority to finally adjudicate *any and all* fraudulent transfer claims. Instead, it holds that the resolution of fraudulent transfer claims may be within the core powers of a bankruptcy judge if the defendants are also creditors in the underlying bankruptcy proceeding.

Of course, a party's decision to file a proof of claim in a bankruptcy proceeding does not empower a bankruptcy court to resolve *every* claim by a debtor or trustee against that creditor. In *Stern v. Marshall*, a creditor filed a defamation complaint—and subsequently a proof of claim for the defamation action—against the debtor in a bankruptcy proceeding. 131 S. Ct. at 2601. The debtor filed a counterclaim, alleging that this same creditor had tortiously interfered with the debtor's deceased husband's estate. *Id.* The Court held that the debtor's tortious interference counterclaim "involve[d] the most prototypical exercise of judicial power: the entry of a final, binding judgment *by a court* with broad substantive jurisdiction, on a common law cause of action, when the action neither derives from nor depends upon any agency regulatory regime." *Id.* at 2615. The fact that this defendant was a creditor in the underlying bankruptcy proceeding did not give the bankruptcy court authority to adjudicate this common law counterclaim. *Id.* at 2615-18. While "[t]here was some overlap between [the debtor's] counterclaim and [the creditor's] defamation claim . . . . there was never any reason to believe that the process of adjudicating [the creditor's] proof of claim would *necessarily* resolve [the debtor's] counterclaim." *Id.* at 2617 (emphasis added.) Regardless of whether a party is a creditor in the underlying bankruptcy proceeding, to determine whether a claim is constitutionally core, the ultimate consideration is whether the challenged claim "stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process." *Id.* at 2618.

Unlike the fraudulent transfer claim in *Granfinanciera*, most of the Defendants in this case are creditors in the underlying bankruptcy proceeding. And more importantly, unlike the

10

tortious interference claim in *Stern*, the Bankruptcy Court in this case will necessarily resolve these fraudulent transfer claims as part of its claims allowance process. In Count 31 of the Amended Complaint, the Trustee seeks to disallow proofs of claim filed by Defendants who have allegedly received avoidable transfers—pursuant to § 502(d). Amended Complaint ¶¶ 469-473, *In re TMST, Inc.*, Case No. 11-00340-DK (Bankr. D. Md. June 8, 2011), ECF No. 15. Section 502(d) "makes clear that [a] [d]efendants' proofs of claim cannot be allowed until a determination of the fraudulent transfer claims has been made." *Mason v. Ivey*, 498 B.R. 540, 548-49 (M.D.N.C. 2013) (concluding "that when a proof of claim has been filed in a bankruptcy case to which, as here, the trustee objects, a trustee's fraudulent transfer claims necessarily must be resolved in the claims allowance process"); *see also Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 490 B.R. 46, 54-55 (S.D.N.Y. 2013) ("[W]henever [a] [b]ankruptcy [c]ourt must resolve a § 502(d) claim brought by [a] [t]rustee, it may also finally decide avoidance actions to the extent that those actions raise the same issues as the § 502(d) claim and thus would 'necessarily' be resolved by it."). As a result, the Court expects that the Avoidance Claims will necessarily be resolved in the course of the Bankruptcy Court's claims allowance process.

Defendants would have the Court read *Stern* and *Granfinanciera* quite differently, arguing that all fraudulent transfer claims are constitutionally non-core, and that "[c]ourts have recognized this, without distinguishing between claims asserted against creditors and non-creditors." (ECF No. 3 at 11.) In particular, Defendants rely on one decision by a court in this district. In *In re Erickson Ret. Cmtys., LLC*, Civ. No. WDQ-11-3736, 2012 WL 1999493 (D. Md. June 1, 2012), the court interpreted *Stern* and *Granfinanciera* to hold "that fraudulent conveyance claims must be finally decided by Article III courts, not Bankruptcy Courts." *Id.* at *3. More recently, a different court in this district took up the same question and reached the

11

opposite conclusion. *See Albert*, 506 B.R. 453. In *Albert*, the district court recognized "a split of authority as to how broadly *Stern* should be read," citing *Erickson* as an example where courts have applied *Stern* broadly. *Id.* at 458. The *Albert* court ultimately concluded that the holding in *Stern* should be applied narrowly, *id.*, and this Court agrees. The Court rejects the Defendants' broad interpretation of *Granfinanciera* and *Stern*, adopts the reasoning in *Albert*, and now holds, for the purpose of deciding this motion, that even after *Stern*, a bankruptcy court has the authority to finally adjudicate fraudulent transfer claims if they are necessarily resolvable as part of the claims allowance process.

### *2. The Objections to Defendants' Proofs of Claim*

In the Objections to Defendants' Proofs of Claim—Counts 27, 29, and 31—the Trustee seeks to disallow and/or reduce Defendants' claims in the underlying bankruptcy proceeding. Thus, it appears that it is within the Bankruptcy Court's core power to finally adjudicate these claims because they will necessarily be resolved in the course of the claims allowance process.

The Defendants do not contend that Counts 29 and 31 are non-core claims, and for good reason. Count 29 is a claim for equitable subordination of Defendants' proofs of claim, pursuant to § 502(b) and § 510(c), and Count 31 is a claim for disallowance of claims pursuant to § 502(d). Both counts go to the heart of the claims allowance process.

Defendants do, however, contend that Count 27 is non-core. In Count 27, the Trustee alleges breach of repurchase agreements, seeks the transfer of property now held by Defendants that is deemed part of the Debtors' estates—pursuant to 11 U.S.C. § 559—as well as the disallowance and reduction of Defendants' proofs of claim—pursuant to *id.* § 562. In granting in part a motion to reconsider an order dismissing Count 27 as to Citi Global LTD, the Bankruptcy Court previously noted "that dismissal of Count 27 would prejudice [the Trustee's] rights to challenge [a defendant's] proof of claim under Section 559 of the Bankruptcy Code and a finding

12

that the claim should be disallowed or reduced based upon a subsequent finding that Section 562 of the Bankruptcy Code necessitates a valuation of the liquidated securities other than that which is asserted by [the defendant]." Nov. 14, 2014 Order, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. Nov. 14, 2014), ECF No. 91. The Bankruptcy Court's reasoning suggests that Count 27 is necessarily resolvable as part of the claims allowance process.

For these reasons, it appears that Counts 27, 29, and 31 raise constitutionally core claims.

### 3. The Common Law Claims

The Trustee's remaining two claims—Counts 7 and 28—are traditional common law claims.

In Count 7, the Trustee alleges that Defendants breached the Override Agreement by failing to remit owed interest payments. Amended Complaint ¶¶ 244-255, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. June 8, 2011), ECF No. 15. The Trustee seeks "all interest payments to which TMST was entitled for the months of August 2008 through November 2008 in the aggregate amount of not less than $121.8 Million . . . ." Amended Complaint ¶ 255, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. June 8, 2011), ECF No. 15. Count 7 is the prototypical "common law [claim] that simply attempts to augment the bankruptcy estate—the very type of claim that [the Supreme Court] held in *Northern Pipeline* and *Granfinanciera* must be decided by an Article III court." *Stern*, 131 S. Ct. at 2616. The Trustee did not cite, and the Court could not find, any provision in the Override Agreement or other legal authority to support the proposition that this pure breach of contract claim must *necessarily* be resolved as part of the claims allowance process. The Court suspects that this plain breach of contract claim, if successful on the merits, may result in a remedy of money damages but would not render the contract unenforceable. Thus, it appears that the claim is not constitutionally core as to any of the Defendants, and must be finally adjudicated by an Article III judge.

In contrast, in Count 28 the Trustee alleges that "the Override Agreement, AOA, First Release, March Forbearance Agreements, Second Releases, and the obligations and transfers related thereto, are otherwise *invalid and unenforceable* because they are the product of coercion and/or duress, and the Debtors are entitled to rescission of [the] Override Agreement, AOA and March Forbearance Agreements." Amended Complaint ¶ 456, *TMST*, Case No. 11-00340-DK (Bankr. D. Md. June 8, 2011), ECF No. 15 (emphasis added). The Fourth Circuit recently held that a debtor's counterclaim seeking to declare a loan agreement as unenforceable was "constitutionally core, because the validity of the Loan Agreement would 'necessarily be resolved' in adjudicating [the creditor's] proof of claim and [the debtor's] objections thereto." *Moses*, 781 F.3d at 70 (quoting *Stern*, 131 S. Ct. at 2618). Likewise, Count 28 appears to be a constitutionally core claim because it alleges that the contested agreements are unenforceable, and the validity of these agreements must be assessed as part of the claims allowance process.

### B. *Other Considerations*

In sum, in order to decide the motion before it and for that purpose only, the Court finds that all claims against creditors are *statutorily* core, and are probably *constitutionally* core, with the exception of Count 7. In addition to the core/non-core assessment, a court must also consider: "(2) uniformity of bankruptcy administration; (3) forum shopping; (4) conservation of creditor and debtor resources; (5) expediency of the bankruptcy proceeding; (6) the likelihood of a jury trial." *Albert*, 506 B.R. at 455.

Defendants primarily argue that the Court should withdraw the reference for two additional reasons: (1) to conserve resources; and (2) to promote the uniformity of bankruptcy administration. Neither rationale is persuasive.

*1. Conservation of Resources*

Defendants are concerned that the creditors and debtors will waste countless resources re-litigating claims over which the Bankruptcy Court lacks final adjudicatory authority. (ECF No. 1 at 27-32.)

The Defendants first argue that it would be "unworkable" to split this lawsuit (i.e., to withdraw the reference as to only *some* claims). (*Id.* at 27.) The Court agrees, and will not split these proceedings. Fears of issue preclusion are unwarranted. Defendants also argue that, if the bankruptcy court submits proposed findings to this Court for de novo review pursuant to § 157(c)(1), this Court will have to re-take countless hours of testimony because "[a] cold record would plainly be inadequate for . . . review of issues so dependent on live testimony and credibility determinations." (*Id.* at 31.) De novo review does not necessarily imply merely a "cold record" review, and it does not require the Court to take additional evidence. Rather, the Federal Rules of Bankruptcy Procedure enable a district court to take a hybrid approach: "The district judge shall make a de novo review upon the record, or after additional evidence, of any portion of the bankruptcy judge's findings of fact or conclusions of law . . . ." Fed. R. Bank. P. 9033(d). Concern about avoiding work duplication is not dispositive here.

Moreover, there is "significant value in having the bankruptcy court preside over preliminary legal and discovery issues in a proceeding that is related to a bankruptcy case given its greater familiarity with the issues involved." *Albert*, 506 B.R. at 459 n.3. While the adversarial proceeding was recently reassigned to a new judge, the Bankruptcy Court possesses expertise and familiarity with all matters related to bankruptcy proceedings. Resources are especially preserved where the same bankruptcy court is adjudicating both the adversarial and bankruptcy proceedings, as is true here. *C.f. Erickson*, 2012 WL 1999493, at *3-4 (granting a motion to withdraw the reference where, *inter alia*, the Chapter 11 proceeding was in Texas and

the adversarial proceeding was in Maryland, but noting that "[w]hen the Bankruptcy Court handling the adversary proceeding is also handling the bankruptcy proceeding . . . there is still significant value in having the bankruptcy court preside over preliminary legal and discovery issues in a proceeding that is related to the bankruptcy action").

Thus, this factor does not justify withdrawing the reference to the bankruptcy court.

### 2. *Uniformity of Bankruptcy Administration*

Defendants also contend that the motion to withdraw should be granted because it would promote the uniformity of bankruptcy administration, especially where six related adversarial proceedings are, or were, adjudicated in the district court. (ECF No. 1 at 32-33.) The Court notes, and Defendants concede, that only one of these six related proceedings is still pending; the other five have been resolved and are closed. (*See id.* at 33.) And while the Trustee may have brought similar causes of action in the related proceedings (*id.* at 32-33), the Court finds no evidence to suggest that these claims implicate the same or similar debts. Thus, allowing this matter to remain with the Bankruptcy Court poses no risk of producing conflicting outcomes, and this factor does not justify withdrawing the reference.

### C. *The Court's Discretion—Balancing the Factors*

Defendants' motion was indeed timely, and the Court does not suspect Defendants of forum shopping. But all other factors weigh in favor of denying the motion to withdraw.

With the sole exception of Count 7, every remaining claim against a creditor seems to be *statutorily* and *constitutionally* core, and thus a bankruptcy court has final adjudicatory authority pursuant to 28 U.S.C. § 157(b). Claims against non-creditors may be *statutorily* core, but are probably not *constitutionally* core because they are not necessarily resolvable as part of the

16

claims allowance process.⁹  In addition to retaining a large number of core claims, the bankruptcy court is in a better position to conserve litigant resources, promote the uniformity of bankruptcy administration, and ensure the expediency of the bankruptcy proceedings.

The Supreme Court recently acknowledged that "without the distinguished service of [bankruptcy judges], the work of the federal court system would grind nearly to a halt." *Wellness Int'l. Network, Ltd. v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).  This Court agrees completely.  After considering all of the factors, and in accordance with its "broad discretion" to decide such motions, *see Millennium Studios*, 286 B.R. at 303, the Court finds that Defendants have not satisfied their burden to show that withdrawing the reference is appropriate.  As stated *supra*, the Court does not go beyond what is necessary to decide the instant motion, and it does not finally decide which claims are core proceedings, but leaves that initial determination in the skilled hands of the Bankruptcy Judge, subject to review on appeal.

### *III. Conclusion*

Accordingly, an order will issue DENYING the Defendants' motion to withdraw the reference (ECF No. 1).

DATED this __6ᵗʰ__ day of July, 2015.

>                            BY THE COURT:
>
>                            _____/s/_____
>                            James K. Bredar
>                            United States District Judge

---

⁹ This set of constitutionally non-core claims appears to include all claims against RBS Securities.  In addition, it appears to include claims by TMHS and TMHL against JPMorgan, UBS, and Citi, as well as claims by TMHL against RBS PLC and GCD.  (*See* ECF No. 3 at 13-14.)